JNO. C. WHITLOCK *v.* G. A. CHAMPLIN, ETC.

Taxation—Payment to Sinking Fund Commissioners—Order of Court.
    Until the order of the court, as provided by § 8 of the act of 1868, ordering the sheriff to pay over to the sinking fund commissioners the amount directed to be added to the principal of the sinking fund, such commissioners have no right to proceed against the sheriff to compel him to pay over any portion of the tax, or to receive and receipt for it in their corporate or official capacity.

**Taxation—Money Set Apart for Sinking Fund.**

 Until the tax is collected and a portion of it dedicated and set apart to the sinking fund by order of the county court, the sheriff holds it as custodian of that court and is liable to suit by such court for any breach of his official duty.

**Taxation—Sinking Fund—Supervision of Taxes Collected For.**

 Under § 8, Acts 1868, relating to collection of taxes and sinking fund, the county court should have supervision of the collection and management of the taxes collected until a portion of it is set apart and dedicated to the sinking fund by appropriate orders, and that the sinking fund commissioners have the right to demand and receive it.

**Counties—Order of County Court—Collection by Jury Commissioners.**

 An order of the county court which goes no further than to order the jury commissioners to collect the money loaned out, and to apply the same and other money in their hands and raised for that purpose to the payment of court house bonds, so far as it applies to money raised, or to be raised, and not within the commissioners' hands, means that they were to so use it when received.

APPEAL FROM CHRISTIAN CIRCUIT COURT.

February 24, 1873.

OPINION BY JUDGE LINDSAY:

The second section of the act of February 13, 1867, authorizing the Christian County Court to issue bonds for the purpose of building a court house, and to establish a sinking fund to liquidate said bonds, makes it the duty of said court "annually to levy an additional tax on the property subject to pay state revenue, which when added to the poll tax should be sufficient to defray the necessary county expenses, and the expenses before named (i. e., the interest on the bonds issued and the expenses incidental thereto and the expense incident to conducting the sinking fund). The eighth section makes it the duty of the county court annually to order the sheriff or county collector to pay over to the sinking fund commissioners the amount directed to be added to the principal of the sinking fund, and should he fail to do so the commissioners are authorized to proceed against him by motion. The tenth section invests the county court with the right of action against the sheriff or collector for failing or neglecting to collect the poll tax and ad valorem taxes levied for the benefit of the sinking fund.

The two thousand three hundred dollars ($2,300) in litigation in this suit is a part of the tax levied in 1868, and collected by the sheriff in 1869.

According to the terms of the second section of the act, the levy of 1868 was for the purpose of defraying the necessary county expenses, and the interest on the court house bonds and the expenses incident to the sinking fund, etc. The tax, when collected, was a general county fund. No specific part of it belonged to the sinking fund nor did the sinking fund commissioners have any power to determine what portion they would receive, hold and manage in the discharge of their duties as custodians of that fund.

Their rights and duties touching the tax collected under the levy of 1868 could only be called into existence by the county court, in obedience to the provisions of the eighth section, "ordering the sheriff * * * to pay over" to them "the amount directed to be added to the principal of the sinking fund." Until such order was made they had no right either to proceed against him to compel him to pay to them any portion of said tax or to receive and receipt for it, in their corporate or official capacity.

Until the tax should be collected and a portion of it dedicated and set apart to the sinking fund by the order of the county court, the sheriff held it all as the custodian of that court, and was liable to suit at the hands of that body for any breach of official duty by the express provisions of the tenth section of the act. It is manifest that the Legislature did not intend that the officer collecting the county taxes for Christian County should be responsible to the different agencies of the people at the same time. It seems to us that the intention is clear that the county court should supervise the collection and management of the entire amount collected, until a portion of it should be set apart and dedicated to the sinking fund by appropriate and proper orders, and that then the right of the commissioners of such fund to demand and receive it should accrue.

A careful inspection of the pleadings, exhibits and proof presented by this record demonstrates that this action is not prosecuted, nor a recovery sought, upon the idea that the two thousand three hundred dollars ($2,300) paid over to Buckner upon the order and receipt of himself and Brasher in and prior to October, 1869, had before that payment been set apart to the sinking fund.

It is true that the order of June 12, 1868, levying the ad valorem

tax, recites that it was for the purpose of paying three thousand dollars of the principal and interest of the bonds of the county issued for the purpose of building the court house and jail, but there is nothing in the order except this recital, from which it can be gathered that this tax was to be paid over to the sinking fund commissioners, and it is perfectly clear that they could not have demanded or sued for the tax or any part of it when collected under authority conferred upon them by said order. The county court order of October 8, 1868, goes no farther than to order the commissioners to collect the money loaned out and to apply the same and all other money in their hands, and *raised for that purpose,* in payment of bonds, etc.

Of course, this order, so far as it applies to money raised or to be raised, and not then in the commissioners' hands, could only mean that they were to so use it when they received or were entitled to receive it.

Inasmuch as the county court had made no order directing what specific portion of the tax collected under the levy of 1868 should be added to the principal of the sinking fund, and as said tax in October, 1869, remained subject to the exclusive control of the county court, Buckner and Brasher had no right to receive and receipt for any part thereof in that capacity of sinking fund commissioners.

The payments to them or either of them were individual transactions between them and the sheriff, for which the body corporate, designated the "sinking fund commissioners," or the sureties on the official bond executed by that body, cannot be held responsible. If there is any cause of action against Buckner and Brasher it is because, by the execution of the receipt and order, and by professing to act in their capacity as sinking fund commissioners, a promise to pay the amounts received, to the sinking fund commission, when it should be authorized to receive the same, may be implied. Upon this question, however, we express no opinion, inasmuch as it is not presented for adjudication.

For the reasons indicated the judgment is *reversed* and the cause remanded. Appellees should be allowed to amend their pleadings in case they desire to do so. Further proceedings not inconsistent with this opinion may be had.

*McPherson, Champlin,* for appellant.

*Hunter, Wood,* for appellees.